UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON


CIVIL ACTION NO. 09-380-GWU


CAROLYN MAYES,                                                    PLAINTIFF,


VS.                        **MEMORANDUM OPINION**


MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,                    DEFENDANT.


## INTRODUCTION

The plaintiff originally brought <u>Mayes v. Astrue</u>, Civil Action No. 3:07-CV-338 (E.D. Tenn.) to seek judicial review of an administrative decision denying her applications for Social Security Income (SSI) and Disability Insurance Benefits (DIB) originally filed April 26, 2004 (Tr. 42-6, 456-9). After a period of administrative reconsideration prompted by an Order of July 30, 2008 (Tr. 528-9), another negative agency decision was issued (Tr. 503-11). After additional applications were consolidated (Tr. 503), the appeal is now before the undersigned on cross-motions for summary judgment.

## APPLICABLE LAW

The Commissioner is required to follow a five-step sequential evaluation process in assessing whether a claimant is disabled.

1.    Is the claimant currently engaged in substantial gainful activity?
      If so, the claimant is not disabled and the claim is denied.

1

2.      If the claimant is not currently engaged in substantial gainful activity, does he have any "severe" impairment or combination of impairments--i.e., any impairments significantly limiting his physical or mental ability to do basic work activities?  If not, a finding of non-disability is made and the claim is denied.

3.      The third step requires the Commissioner to determine whether the claimant's severe impairment(s) or combination of impairments meets or equals in severity an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the Listing of Impairments).  If so, disability is conclusively presumed and benefits are awarded.

4.      At the fourth step the Commissioner must determine whether the claimant retains the residual functional capacity to perform the physical and mental demands of his past relevant work.  If so, the claimant is not disabled and the claim is denied.  If the plaintiff carries this burden, a prima facie case of disability is established.

5.      If the plaintiff has carried his burden of proof through the first four steps, at the fifth step the burden shifts to the Commissioner to show that the claimant can perform any other substantial gainful activity which exists in the national economy, considering his residual functional capacity, age, education, and past work experience.

20 C.F.R. §§ 404.1520; 416.920; Garner v. Heckler, 745 F.2d 383, 387 (6th Cir.

1984); Walters v. Commissioner of Social Security, 127 F.3d 525, 531 (6th Cir.

1997).

        Review of the Commissioner's decision is limited in scope to determining

whether the findings of fact made are supported by substantial evidence.  Jones v.

Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir.

1991).  This "substantial evidence" is "such evidence as a reasonable mind shall

accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the issues with the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim.  Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982).  This presumes, of course, that the treating physician's opinion is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. § 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1)

whether objective medical evidence confirms the severity of the
alleged pain arising from the condition; or (2) whether the objectively
established medical condition is of such a severity that it can
reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.

1986).

Another issue concerns the effect of proof that an impairment may be

remedied by treatment.  The Sixth Circuit has held that such an impairment will not

serve as a basis for the ultimate finding of disability.  Harris v. Secretary of Health

and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984).  However, the same

result does not follow if the record is devoid of any evidence that the plaintiff would

have regained his residual capacity for work if he had followed his doctor's

instructions to do something or if the instructions were merely recommendations.

Id.  Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106,

1113 (6th Cir. 1986).

In reviewing the record, the court must work with the medical evidence before

it, despite the plaintiff's claims that he was unable to afford extensive medical work-

ups.  Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th

Cir. 1987).  Further, a failure to seek treatment for a period of time may be a factor

to be considered against the plaintiff, Hale v. Secretary of Health and Human

Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way

to afford or obtain treatment to remedy his condition, <u>McKnight v. Sullivan</u>, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step four refers to the ability to return to one's past relevant category of work. <u>Studaway v. Secretary</u>, 815 F.2d 1074, 1076 (6th Cir. 1987).  The plaintiff is said to make out a <u>prima facie</u> case by proving that he or she is unable to return to work. <u>Cf. Lashley v. Secretary of Health and Human Services</u>, 708 F.2d 1048, 1053 (6th Cir. 1983).  However, both 20 C.F.R. § 416.965(a) and 20 C.F.R. § 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all.  Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case.  <u>Id.</u> at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had.  <u>E.g.</u>, <u>Faucher v. Secretary of Health and Human Services</u>, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. § 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. § 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.

In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff filed applications for DIB and SSI alleging disability due to heart disease with an alleged onset date of March 15, 2004. (Tr. 94-5). Administrative Law Judge (ALJ) John L. McFadyen denied the applications in a hearing decision dated May 10, 2006. (Tr. 19). ALJ McFadyen found that the plaintiff had "severe" impairments consisting of heart disease, a right shoulder impairment, and a pulmonary impairment, but, without deciding whether she could perform past relevant work, concluded that she retained the residual functional capacity to perform a full range of light level exertion, and proceeded to apply Rules 202.20 and 202.21 of the Commissioner's Medical-Vocational Guidelines (the "grids") applicable to an individual of the plaintiff's age, education, and work experience, which direct a conclusion of "not disabled." (Tr. 18-19). The plaintiff, who was then a resident of Tennessee, appealed the decision at the federal court level, and on June 4, 2008 United States Magistrate Judge H. Bruce Guyton issued a Report and

Recommendation that the case be remanded to the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g). (Tr. 531). Magistrate Judge Guyton criticized the ALJ's decision for "not mak[ing] a finding as to whether [the plaintiff's] 'severe' heart impairment, pulmonary impairment and right shoulder impairment implicated additional exertional and/or non-exertional limitations." (Id.). The Magistrate Judge also observed that no functional capacity assessment was obtained and no vocational expert testified, and concluded that it was unclear "whether the plaintiff can or cannot, with or without restrictions, return to her past relevant work as a fast food restaurant employee." (Id.). The Magistrate Judge recommended to the District Court that the case be remanded, "that plaintiff be examined by a physician and that all appropriate assessments be done," and "that a qualified vocational expert be questioned regarding available jobs." (Id.). On June 30, 2008, United States District Judge Thomas A. Varlan accepted the Magistrate's Report and Recommendation and remanded the case pursuant to Sentence Four "for a new hearing consistent with this opinion and Magistrate Judge Guyton's Report and Recommendation." (Tr. 528-9).

On remand, because the plaintiff had moved to Kentucky, the case was assigned to ALJ Frank Letchworth, who considered additional evidence and heard additional testimony from the plaintiff at a March 20, 2009 hearing. The plaintiff stated that she had returned to work in April of 2008 as a security guard at a coal

company and was working between 24 and 36 hours a week. (Tr. 594-5). ALJ Letchworth noted there was documentary evidence that the plaintiff worked as much as 48 hours a week in January, 2009, and not less than 32.50 hours. He determined that, more often than not, the plaintiff worked as much or more than a full-time employee, and found that she had been engaging in substantial gainful activity from April 22, 2008 through the date of the decision. (Tr. 506). The plaintiff does not challenge this finding on appeal, and confines her current objections to a closed period from March 1, 2004 through April 21, 2008.

ALJ Letchworth found that for the closed period in question the plaintiff had a "severe" combination of impairments consisting of coronary artery disease, well compensated Class I-II congestive heart failure, status post right shoulder repair times 2, a history of seizure disorder, and chronic obstructive lung disease. (Tr. 506). Despite these impairments, he concluded that the plaintiff retained the residual functional capacity to perform work at all exertional levels, but was precluded only from crawling in covered areas, climbing ladders, ropes, and scaffolds, and working around heights or dangerous machinery. (Tr. 508). The ALJ concluded that there was nothing in the plaintiff's past relevant jobs as a cashier/deli worker as usually performed in the national economy, and security guard as she currently performed it, that would preclude their performance with these restrictions. (Tr. 511). Therefore, he terminated the sequential evaluation process at Step Four.

The plaintiff argues on appeal that the ALJ did not comply with the District Court's orders on remand, and that it continues to be inconsistent to find "severe" shoulder and lung impairments with no corresponding non-exertional restrictions. The plaintiff asserts that the job of security guard could not be considered "past relevant work" because the plaintiff had not performed it prior to the period at issue, and that reaching and handling restrictions and a need to avoid respiratory irritants would preclude the plaintiff's past work in a fast food restaurant.

There can be little doubt that, despite the defendant's protestations to the contrary, Magistrate Judge Guyton's Report and Recommendation, fully adopted by Judge Varlan, contained specific instructions regarding the need to obtain a physical examination, functional capacity assessment(s), and vocational expert testimony, and there can be no question that the defendant did not comply. Moreover, despite the order of the Appeals Council directing the ALJ to conduct "further proceedings consistent with the order of the court" (Tr. 534A), the ALJ barely acknowledged the content of the District Court order, summarizing it only as "direct[ing] the undersigned to give further consideration to the claimant's impairments and residual functional capacity . . . ." (Tr. 503).

This court has not hesitated to remand cases in the past when it has appeared that the defendant has failed to follow court orders on remand.  Its

concern is heightened when, due to the plaintiff's change of residence, the court which originally issued the order no longer has jurisdiction.

In the present case, however, the plaintiff's own action in returning to work has resulted in a change of circumstances.  Magistrate Judge Guyton's order contemplated a situation in which the plaintiff was not working, in which she had not clearly been found to be incapable of returning to past relevant work as a fast food worker, but had been noted to have a severe combination of impairments which were not reflected in ALJ McFadyen's determination that she retained the ability to perform a full range of light work.  (Tr. 18).  With the plaintiff's return to full-time work as a security guard (Tr. 506, 595) earning over $1,000.00 a month for over nine months, the question no longer became whether she was capable of performing any work existing in the national economy, but whether she was capable of performing this job, or the job of fast food worker, during the closed period from March 1, 2004 to April 21, 2008.

The plaintiff's assertion that the job of security guard could not be considered past relevant work is in error.  The Commissioner's regulations define "past relevant work" as work that a claimant has done "within the past fifteen years, that was substantial gainful activity, and that lasted long enough for [the claimant] to learn to do it."  20 C.F.R. § 404.1560(b)(1).  Social Security Ruling (SSR) 82-62 states that the relevant fifteen year period "is generally the fifteen years prior to the time of

adjudication at the initial, reconsideration or higher appellate level."  Since the plaintiff worked as a security guard from April, 2008 at least until the time of the second administrative decision on March 20, 2009, the job was clearly performed less than fifteen years before the ALJ adjudicated her claim on July 15, 2009.  As the Eleventh Circuit of Appeals noted in a recent unpublished case, there is apparently "no authority . . . for the proposition that in closed period cases past relevant work is limited to work performed for the claimed period of disability." Mitchell v. Commissioner of Social Security, 2010 WL 3273614 (11th Cir. August 19, 2010, at *2) (citations omitted).

It is basic Social Security law that it is the plaintiff's burden to prove that she cannot perform her past relevant work, and if she fails to do so, the burden does not shift to the Commissioner to demonstrate that there are jobs in the economy which she can perform.  Magistrate Judge Guyton was dealing with an ALJ decision that purported to rely on the "grids" to show that there were jobs the plaintiff could perform and although ALJ McFadyen did not say so explicitly, reliance on the grids implies that the plaintiff could not perform her past relevant work.  The plaintiff's return to the work force as a security guard meant that it was not only reasonable, but necessary under the regulations to reconsider the issue of past relevant work.  Therefore, it was reasonable to examine whether the plaintiff had any medical

restrictions during the closed period that would prevent the performance of this past work.

The plaintiff testified that the only reason she stopped working in 2004 was because of a heart condition.  (Tr. 478-9).  The condition caused her to be fatigued. (Tr. 494).  Medical records show that the plaintiff underwent a graded exercise stress test in April, 2004 which showed only a 10 percent aerobic impairment, placing her in the New York Heart Association's Functional Class I.  (Tr. 431).  This classification is equivalent to essentially no impairment.   American Medical Association, Guides to the Evaluation of Permanent Impairment (Sixth Ed. 2008) at 48.  The plaintiff 's cardiologist, Dr. Clint Doiron, followed her condition during the closed period and noted in August, 2006 that, while she had congestive cardiomyopathy, with an ejection fraction of only 32 percent, she was on the proper medications and could use a nitroglycerin patch "especially for active days," but could skip the patches on days she would not be doing much.  (Tr. 543).  By 2007, Dr. Doiron was noting a problem with unusual seizures and palpitations, which he suspected were related to her heart problem, and following a catheterization showing a blockage in an artery, installed a stent.  (Tr. 546).  By September, 2007, the plaintiff's ejection fraction had improved to 56 percent from 35 percent and she was only occasionally using nitroglycerin patches for chest tightness.  He did not assess any permanent functional restrictions.

The plaintiff also had extensive treatment for right shoulder pain during the closed period and Dr. Edwin Spencer eventually performed arthroscopic surgery to repair a torn rotator cuff and decompress the bursa.  (Tr. 284-6, 289).  Further surgery was necessary in September, 2005.  (Tr. 272).  By the time of her last visit to Dr. Spencer, in November, 2005, he noted that the plaintiff was better than prior to surgery, although she still needed to work on internal rotation strengthening.  (Tr. 266).  He commented that she was not "100 percent" and was not sure that she would make it to 100 percent, but advised her to return only as needed.  (Id.).

Due to financial concerns, the plaintiff sought treatment from Dr. John Boll at a free medical clinic beginning in August, 2006.  (Tr. 582).  Her main concern at the time was continued shoulder pain, but there were no abnormalities noted on examination.  (Id.).  Later, in May, 2007, Dr. Boll did note right shoulder tenderness with a very limited range of motion, but declined the plaintiff's request for narcotics.  (Tr. 577).  At the most recent examination, in February, 2008, her range of motion was "antalgic but intact."  (Tr. 573).  Once again, no functional restrictions are supplied.

Regarding the breathing impairment, a pulmonary function test in October, 2005 showed a moderate restriction (Tr. 379) and Dr. Boll provided medications for treatment of bronchitis and sinusitis (e.g., Tr. 373-5).  No physician listed functional restrictions for this condition either.

14

The only examining source who offered an opinion regarding the plaintiff's capacity during the closed period was a physical therapist, Mary K. Branham, who submitted an evaluation in December, 2005 indicating that the plaintiff was unable to lift more than five pounds, could not sit, stand, or walk even one hour in an eight-hour day, could not perform any manipulation or repetitive movements with her arms and hands, and could not perform any postural activities or be exposed to any hazards.  (Tr. 306).  A physical therapist is not an acceptable medical source under the Commissioner's regulations.  20 C.F.R. § 404.1513.  The ALJ cited this reason for rejecting the Branham opinion, along with the lack of evidence to support limitations of this degree.  (Tr. 510).  He accepted the opinion of a state agency reviewer dated December 10, 2004 that the plaintiff was limited by her seizure disorder from crawling in covered areas, climbing ladders, ropes, or scaffolds, and working around hazards such as moving machinery and unprotected heights.  (Tr. 243-50, 510).[1]

Although the December, 2004 opinion clearly did not take into account all of the plaintiff's physical problems as they later developed, the fact remains that there is no other medical evidence of functional restrictions which would be expected to

---

[1]The copy of the assessment form in the court transcript is either unsigned, or had the signature obscured at the time it was copied.  (Tr. 250).  It appears from the concurrent Disability Determination and Transmittal form bearing the same date that the form was completed by Dr. P. Saranga.  (Tr. 30).  The plaintiff has not raised any issue regarding the signature on appeal.

last more than twelve months.  Moreover, even assuming for the sake of argument that the plaintiff is correct and she should have some permanent restrictions on reaching and breathing, such restrictions have not prevented her from performing the job of security guard, and there is simply no evidence that she would have been incapable of performing this position for twelve consecutive months during the closed period.  Therefore, ALJ Letchworth's decision is supported by substantial evidence.  For the same reason, a remand for failing to follow the District Court's remand order would be superfluous.  It would be of little help to the plaintiff to order a current medical evaluation, since it would say little about her condition during the closed period.  Moreover, even finding the existence of breathing and reaching impairments, as previously noted, would not establish that she could not perform the job of security guard.  Therefore, under the unique circumstances of this case, a remand is not required.

The decision will be affirmed.

This the 3rd day of November, 2010.

**Signed By:**

**_G. Wix Unthank_**

**United States Senior Judge**